UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
Case No. 06-CVS-_____

| | |
|---|---|
| JASON COLLETT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMERCIAL RECOVERY SYSTEMS, INC., )<br>)<br>Defendant. ) | |

COMPLAINT
JURY TRIAL DEMANDED

Plaintiff, through counsel, hereby alleges as follows:

## THE PARTIES

1. Plaintiff SSG Jason E. Collett is a natural person who resides in the City of Fayetteville, County of Cumberland, State of North Carolina, and is a "consumer" as that term is defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), *see* 15 U.S.C. § 1692a(3).

2. Defendant Commercial Recovery Systems, Inc. ("CRS") is a collection agency operating from an address of Dallas, Texas, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served with process through its registered agent, c/o The Prentice-Hall Corporation System, Inc., 327 Hillsborough Street, Raleigh NC 27603 or through its principal office address at 8035 E R L Thornton, Suite 220, Dallas TX 75228-7018.

## JURISDICTION

3. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1367.

4. This case is brought within one year of the violation in compliance with the statute of limitations at 15 U.S.C. § 1692k(d).

5. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and/or the Defendant transacts business here.

## FACTUAL ALLEGATIONS

6. SSG Jason E. Collett, the Plaintiff herein, is a servicemember in good standing in the United States Army, stationed at Fort Bragg, having served as an exemplary soldier for fourteen years.

7. SSG Collett is a member of the Army Special Operations Command and is a combat veteran. He has served tours of duty in Bosnia and Afghanistan.

8. He is currently assigned to the Secretary of the General Staff's Office, U.S. Army Special Operations Command.

9. In or about 1999, SSG Collett incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a car loan from Bank One.

10. SSG Collett co-signed on the documents to help his then-wife purchase a 1999 Ford Mustang in Louisiana.

11. SSG Collett and his then-spouse have since separated and divorced in 2003 and to his understanding, his ex-spouse has been making payments on the car and has assumed responsibility over such payments.

12. Sometime thereafter, the alleged debt was upon information and belief consigned, placed or otherwise transferred to Defendant for collection from Plaintiff.

13. On Friday, July 21, 2006, CRS contacted SSG Collett by telephone at his place of duty at the Secretary of the General's Staff Office, Special Operations Command, Fort Bragg, in an attempt to collect this debt. Rick Howells was the CRS representative. Tom Holman of CRS also was on the call from time to time. During that phone call the CRS representatives told Plaintiff he had until Wednesday, July 26 to pay the debt stated to be a settlement amount of approximately $2,800. During that phone call CRS also threatened to call the Commanding General, file a lawsuit for the balance and call the Provost Marshal. During that phone call CRS threatened to contact Fort Ben Harrison to garnish Plaintiff's wages. Holman recited information from Plaintiff's credit report noting various credit cards and telling Plaintiff he could pay using them. CRS said that Plaintiff's ex-wife informed them that Plaintiff had the vehicle (which is incorrect). SSG Collett told CRS not to call him at work.

14. On Monday, July 24, 2006 (two days before Wednesday the 26th), Holman of CRS phoned SSG Collett at Special Operations Command again, while he was on duty, to ask what he had done to get the $2,800, said words to the effect that "they are not going to play this game," threatened to "file a replevin order," threatened to start the process that day to garnish his wages through Fort Ben Harrison, said that the payoff and court and attorneys' fees would add up to $4,650.82, and said CRS would call the Provost Marshal and the Commanding General. SSG Collett told CRS not to call him at work.

15. On Tuesday, July 25, 2006 (in spite of purportedly giving SSG Collett until July 26 to pay this debt), CRS called the Secretary of the General's Staff Office asking to speak directly with Lieutenant General Wagner, the Commanding General. The Commanding General of the U.S. Army Special Operations Command is approximately

four steps away from the President of the United States in the U.S. Army's command structure. When confronted by SSG Collett, CRS continued to pressure him. SSG Collett told CRS not to call him at work.

16. CRS attempted to use the military instrumentalities to intimidate SSG Collett. For example, by making the threat to contact the Provost Marshal, CRS implied criminal action against SSG Collett. By making the threat to contact Fort Ben Harrison, CRS implied taking an adverse financial action against SSG Collett. By making the threat to contact the Commanding General, and taking the steps to do so, CRS implied taking an adverse military action against SSG Collett.

17. Other NCOs and Soldiers in SSG Collett's office have had to take messages from CRS. This has caused a great deal of disruption, frustration and emotional stress to SSG Collett and has interfered with military functions at Special Operations Command.

18. CRS has also telephoned SSG Collett's mother.

19. By letter dated Tuesday, July 25, 2006, faxed to an unlisted number at Special Operations Command, CRS contacted SSG Collett again in an attempt to collect the debt.

20. On Tuesday, July 25, 2006, SSG Collett sought assistance from JAG counsel at Fort Bragg. JAG counsel contacted CRS and informed them of SSG Collett's legal representation. JAG counsel faxed an authorization letter signed by SSG Collett to CRS. In a subsequent phone conversation between JAG counsel and CRS, JAG counsel informed CRS not to contact the client or anyone else in this matter except JAG counsel.

4
Case 4:06-cv-00170-FL   Document 1   Filed 07/28/06   Page 4 of 11

21. On <u>Wednesday, July 26, 2006</u>, ignoring the instructions of counsel and of the Plaintiff, Sam Riker of CRS called SSG Collett on duty. CRS had actual knowledge that SSG Collett had reported the matter to Fort Bragg JAG Legal Counsel and was represented by counsel, and of multiple instructions by SSG Collett for CRS not to phone him at Special Operations Command. Riker said words to the effect of "crying to JAG won't do you any good," cited military "Article 134," said he was familiar with military law and said SSG Collett could be tried before a "Special Court Martial," said he could be placed under arrest, said he would be liable for attorney's fees, court costs and repossession costs adding up to $5,000 or $6,000, said words to the effect of "crying to JAG is nothing since I've eaten up JAG Officers," said he had seen peoples' careers destroyed and being "sent to Fort Leavenworth," said he would call Wells Fargo and put a lien on his house (Wells Fargo is financing lender for his home), recited information only available from SSG Collett's private credit report, said CRS would put a lien on his car, said under the "Hatch Act of 1995" he would be liable, among other statements.

22. On Wednesday, July 26, the undersigned counsel faxed a cease and desist letter to CRS' home office in Dallas, Texas and instructed CRS not to contact SSG Collett further and to direct all further communications to counsel.

23. On <u>Thursday, July 26</u>, a phone message was left for SSG Collett from a "Mr. Bronson." The message read that he was returning Collett's call and that Collett had his number. SSG Collett does not recall previously speaking to a "Mr. Bronson."

24. Also on Thursday, July 26, ignoring the cease and desist letter, Mr. Riker called SSG Collett leaving a message on his phone threatening to "keep his end of the

deal" which was to try to ruin SSG Collett's career, put a lien on his house and car, take him to court, seek a Replevin Order, etc.

25. Upon information and belief, Defendant has engaged in similar conduct and used similar form letters violating the FDCPA with regard to numerous other servicemembers during the class period.

26. Defendant's conduct was reprehensible, unconscionable, and warrants imposition of punitive damages to punish and deter.

27. Servicemembers should not be required to accede to harassment and improper collection practices by commercial debt collectors, especially in a time of war.

## COUNT ONE
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

28. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

29. This claim arises out of Defendant's violations of the FDCPA in its improper efforts to collect a debt.

30. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA.

31. Despite having first contacted Plaintiff on Friday, July 21, 2006, as of Wednesday July 26, 2006, which is five days later, the Defendant had not provided the required notification in writing as mandated by 15 U.S.C. § 1692g(a)(3) and § 1692g(a)(4).

32. Upon information and belief, the omission of the required notification in the July 25, 2006 letter represents a pattern and practice of noncompliance with the FDCPA, as do the other violations alleged herein.

33. The conduct of Defendant in harassing Plaintiff in an effort to collect this debt also violated other provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(5), 1692e(7), 1692e(10), and/or 1692f, amongst others.

34. Defendant engaged in threats to the Plaintiff, repeatedly disregarded instructions by Plaintiff not to call him at work and by counsel not to contact the Plaintiff, and as stepped completely outside the bounds of lawful behavior.

35. Defendant's extraordinarily abusive collection efforts threaten to interfere with operations of Special Operations Command during a time of war.

36. Defendant's direct violations of instructions by Plaintiff, JAG Counsel, and outside counsel to cease and desist communications with Plaintiff and to cease and desist its threats are completely illegal and deserve the most severe penalty.

37. Plaintiff has suffered actual damages as a result of these illegal collection communications in the form of interruption of and interference with his and other servicemembers' functions with the U.S. Army Special Operations Command. As a direct result of the actions of CRS, Plaintiff and the U.S. Army Special Operations Command have suffered interference with their mission and operational duties.

38. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT TWO
## VIOLATION OF THE NORTH CAROLINA DEBT COLLECTION ACT

39. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

40. This claim is brought under the North Carolina Debt Collection Act ("NCDCA"). Plaintiff is a "consumer" as defined by N.C. Gen. Stat. § 75-50(1).

41. The purported obligation incurred is a "debt" as defined by N.C. Gen. Stat. § 75-50(2). Defendant is a "debt collector" under N.C. Gen. Stat. § 75-50(3).

42. Defendant violated N.C. Gen. Stat. § 75-51 including by attempting to collect any debt alleged to be due and owing from a consumer by means of any unfair threat, coercion, or attempt to coerce, or otherwise by unfair and deceptive means.

43. Defendant violated N.C. Gen. Stat. § 75-52 by using conduct, the natural consequence of which was to oppress, harass, or abuse any person in connection with the attempt to collect the debt.

44. Defendant violated N.C. Gen. Stat. § 75-53 by using practices having an effect to unreasonably publicize information regarding the consumer's purported debt.

45. Defendant violated N.C. Gen. Stat. § 75-54 by attempting to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representations.

46. Defendant violated N.C. Gen. Stat. § 75-55 by attempting to collect a debt by use of unconscionable means.

47. Under N.C. Gen. Stat. § 75-56, Defendant's conduct constituted unfair or deceptive acts or practices proscribed by N.C. Gen. Stat. § 75-1.1, and accordingly the Plaintiff is entitled to recovery of a civil penalty up to two thousand dollars.

## COUNT THREE
## UNFAIR AND DECEPTIVE TRADE PRACTICES

48. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49. The North Carolina Unfair and Deceptive Trade Practices Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). Defendant's unfair and deceptive practices alleged herein constitute unfair and deceptive acts or practices in or affecting commerce pursuant to N.C. Gen. Stat. § 75-1.1. Defendant's practices are illegal, unfair or deceptive acts or practices in the conduct of trade or commerce and are inherently deceptive. Defendant's practices alleged herein offend public policy and are immoral, unethical, oppressive, and unscrupulous.

50. Defendant's violations of the NCDCA constitute violations of Chapter 75. Defendant's practices proximately caused harm to Plaintiff, caused harm to North Carolina consumers, and were deceptive in their effect upon an average consumer.

51. Plaintiff has been damaged in an amount to be proven at trial. The damages should be trebled and Plaintiff should be allowed to recover attorneys' fees pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1.

## COUNT FOUR
## INJUNCTIVE AND DECLARATORY RELIEF

52. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

53. Plaintiff requests entry of appropriate declaratory and injunctive relief on behalf both of himself and affected servicemembers, including entry of an order requiring the Defendant collection agency to institute reasonable controls and procedures so as to prevent improper intrusion onto the lives of consumer servicemembers and interference with the functions of the United States military in the course of debt collection efforts.

## COUNT FIVE
## PUNITIVE DAMAGES

54. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

55. Defendant's conduct, as alleged hereinabove, and to the extent the evidence may show, was committed deliberately, intentionally, purposefully, maliciously, and otherwise in a willful and wanton fashion, in violation of N.C. Gen. Stat. § 1D-1 *et seq.*, and evinces an utter and complete disregard of the rights and welfare of military servicemembers; as such, Plaintiff is entitled to punitive damages in such an amount as is deemed sufficient to punish and deter the Defendant and others from engaging in such further conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant:

1. for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant;

2. for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against Defendant;

3. for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant;

4. for an award of statutory damages of $2,000.00 pursuant to N.C. Gen. Stat. § 75-56 and N.C. Gen. Stat. § 75-1.1 *et seq.*, as well as any attorneys fees available thereunder;

5. for an award of the costs of suit, any discretionary costs as may be allowable by law, pre-judgment and post-judgment interest;

6. for an award of punitive damages;

7. for the entry of appropriate declaratory and equitable relief;

8. for a trial by jury of all issues so triable; and

9. for an award of such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted, this the 28th day of July, 2006.

s/Mona Lisa Wallace
Mona Lisa Wallace, Esq.
N.C. State Bar No. 9021
John Hughes, Esq.
N.C. State Bar No. 22126
Wallace & Graham, P.A.
525 N. Main Street
Salisbury, NC 28144
Phone: 704-633-5244
Fax: 704-633-9434

OF COUNSEL:

Angela Martin, Esq.
Office of the Staff Judge Advocate
XVIII Airborne Corps & Fort Bragg
Fort Bragg, NC 28310-5000
N.C. State Bar No. 34951
Phone: 910 396 6113